THE WESTERN RAILROAD *vs.* THORNTON & ACEE.

[This case was argued at the last term and decision reserved.]

1. Is the baggage of a railway passenger subject to garnishment ? *Quaere.*

2. A garnishment directed to the Western Railroad Company of Alabama, a corporation of that state, and served on its local agent at Columbus, Ga., did not bind the company as to the trunk of a passenger which was, at the time of the service, *en route* with the passenger in the state of Alabama, on the way over the company's road from Columbus, Georgia, to West Point, Georgia. As the trunk was not in reach of process issued by this state, when the garnishment was served, that it was subsequently brought by the company into the state at West Point in the due performance of its contract with the passenger, would not render the garnishment effective; more especially, as Columbus and West Point are in different counties, and as it was not made to appear that the local agent at Columbus had any power or authority to control the custody or disposition of the trunk at West Point.

Jackson, Judge, dissented.

Garnishment. Foreign corporations. Railroads. Before Judge CRAWFORD. Muscogee Superior Court. May Term, 1877.

Report unnecessary.

JOSEPH F. POU, for plaintiff in error.

HATCHER & GOETCHIUS, for defendants.

BLECKLEY, Judge.

1. It may be doubted whether the personal baggage of a traveler can be reached or affected by garnishment. If the wearing apparel which his trunk contains is protected, the trunk containing it, and which is necessary for taking due care of it while his journey is in progress, and until his return to his abode, ought, it would seem, to be equally pro-

tected. The trunk is a part of his baggage proper, as well as its contents, and is in the carrier's posession for the sake of the contents. For the time being, it is but an adjunct or incident, the apparel and other articles of necessity within it being the principal. Should not the rule apply, that the incident follows the principal? Garnishment directed to a bailee and duly served, is a species of legal seizure of the property which is the subject of the bailment. The seizure takes place, if at all, at the moment of serving the process. If, at that moment, the trunk in the hands of a carrier, is not in a condition to be the subject of a separate custody from the traveler's apparel, the carrier having no right to open it, the apparel is seized (necessarily so) when the trunk is seized. Thus, in the nature of things, it appears impracticable to employ garnishment against the one and not against the other. The rind and pulp of an orange, or the envelope of a letter and the letter itself, are not much more closely connected than a passenger's trunk and its contents, when the trunk is in the care of the carrier, and the key in the passenger's pocket. To delay or detain baggage by the use of the garnishment, would, or might, work great inconvenience to the traveling public; which, in these times, is almost identical with the public at large. If a debtor's baggage could be stopped, that of his family being frequently mingled with it, all would be stopped together. The family, when at a distance from home, might thus be brought into perplexity and distress of a kind which all women and children, if not all men too, should be spared. To catch up baggage for debt is the next thing to taking the person of the debtor. The traveler had almost as well be put in jail for an hour or two, as to have his trunk or valise locked up at the railroad station. Perhaps he would rather go to jail for a little while if he could have the company of his baggage, than be free on condition of parting with it. To separate him from that which is the object of his chief care and solicitude through the whole course of his wanderings, is hard upon him in

deed. Between passenger and baggage there is a relation beyond that of mere ownership. When baggage is lost, it is not simple privation; it is bereavement. Those in certain public employments, such as inn-keepers and common carriers of passengers, have functions to perform which seem, to a certain extent, incompatible with daily and hourly subjection to garnishment in respect to such articles as guests and passengers are obliged, by the civilization of the age and the habits of society, to bring with them and keep within their reach. If travel is to go on at all in the method now practiced, the traveler has no choice but to commit the care of his trunk at the hotel to the landlord or his servants, and at the railway to the baggage-master. Not only to keep securely, but to surrender or re-deliver promptly, is the bounden duty of inn-keeper and carrier. If this duty is evaded, or if its performance is hindered by legal process, and a counter duty created, the traveler cannot go on his way with that expedition which the public convenience, in oft recurring exigencies, requires. Weddings, funerals, religious assemblies, the sessions of courts, of congress, and of the legislature, are attended, not seldom, by means of public conveyance. The same means are used in urgent calls of commercial and other business, in intercourse with distant friends and relatives, and in visits to the sick and dying. Can it be that garnishment may waylay the traveler, or follow on his track, and deprive him of the necessary luggage with which he set out, when, perchance, his journey may belong to the most important of these several classes?

2. But the present case may be disposed of on the more special ground of want of jurisdiction by the state of Georgia over the trunks in question, at the time the attempt to seize them was made. This is the sole ground thoroughly considered by the supreme court, and the one on which its judgment of reversal is based.

Muscogee and Troup are counties in this state on its western border. The Western Railroad Company of Alabama

is a corporation created by the state of Alabama. Its railway extends from Montgomery to Opelika (both in that state), and thence by one branch to Columbus, in Muscogee, and by another branch to West Point, in Troup. It is thus practicable to pass from Columbus, *via* Opelika, to West Point on this line of railway, nearly the whole route lying within the state of Alabama, but the points of departure and destination both being in Georgia. Shorter, a debtor of Thornton & Acee, took passage at Columbus on the train for West Point, his baggage consisting of two trunks, and being in the baggage car of the same train, in charge of the proper servant of the company. It seems that a separate check of the company for each trunk was originally delivered to Shorter; but because the lock of one of the trunks was discovered to be out of order, the check for that trunk was demanded by the conductor, and surrendered by Shorter, not long after the train left Columbus. Subsequently, while the train was at Opelika, in Alabama, with the trunks on board, one trunk checked and the other not, a summons of garnishment, directed to the company, was served on its local agent at Columbus, the garnishment being founded on an attachment against Shorter, issued at the instance of his creditors above named. The agent communicated by telegraph, giving notice to the conductor that the garnishment had been served. By this conductor the fact was made known to the conductor of the train which was to complete the carriage from Opelika to West Point. Nevertheless, upon the arrival of this train at West Point, both trunks were delivered to Shorter, the delivery being made in Georgia. At the depot of the company in Columbus, before the train from thence started, an effort was made to levy the attachment directly, by seizing the trunks there, but the officer was resisted by the conductor, and the levy prevented. Whether the agent on whom the garnishment was served had any power or authority to control the custody or disposition of the trunks at West Point, is not stated in the evidence.

The superior court, on *certiorari* from the justice court to which the garnishment was returnable, decided that the company was liable in this proceeding as to the trunk for which Shorter held the company's check when the garnishment was served, though not liable as to the other. A majority of this court are of a different opinion. Upon whom may garnishment be served? "Any person that may be indebted to, or have property or effects of, the defendant in their hands." Code, §3302. What is to be done where property or effects are admitted by the garnishee in his answer? "The property, or effects, whatever they may be, shall be delivered into the hands of the sheriff or constable, as the case may be, and by order of the court shall be by him sold; * * * * and in case the garnishee fails to deliver over such property or effects to the officer as aforesaid, it shall be lawful for the court to attach him as for contempt." *Ib.*, §3385. See, also, §3550. From these provisions, construed together, it is obvious that property not within the territory and under the power and jurisdiction of the state, is not contemplated. The remedy by garnishment cannot reach it, and was not intended to do so. Garnishment is not adapted to such a purpose. The exclusive dominion over property, for the time being, is in the government of the country where the property is. With property, real or personal, in Alabama, remedies afforded to creditors by the laws of Georgia, have no more concern than with property of the like kind situated in China. This state, it may be safely assumed, has no will to constrain the removal hither of goods and chattels from other states or countries. But if she had the will, she would not have the power. She could not do it for the purpose of taxing it and thus adding to her revenue, or for the purpose of realizing taxes already due, and not otherwise collectible. Were garnishment issued under section 3557 of the Code, for taxes, the proceeding would not serve to draw property from various quarters of the globe to pay them. No such thing can be done for the state herself as a creditor; nor

can she do the like in behalf of other creditors. A debtor who, by himself or his bailee, has property in Alabama, has a right to keep it there; and the state of Alabama has an interest in his exercise of the right, free from interference by other sovereignties and jurisdictions. Whether the attempt at seizure be direct or indirect, in order to be effectual it is indispensable that the thing to be seized should be upon the soil or in the waters of the government whose process is employed. When legal seizure has been accomplished, the party whose duty it may be to have the property forthcoming, will not be heard to allege its subsequent removal to another state as an excuse for not producing it, unless under special circumstance. But the duty of producing what has never been within the state, or what has passed out of it lawfully before seizure, cannot arise, so as to found thereon an order or judgment to compel production. Cases there are, involving contract, in which the undertaking to perform an act purely personal will be enforced, though the act relates to property which is extra-territorial, jurisdiction of the person only being sufficient. Instances of these are decrees for the specific performance of contracts to convey land situate in foreign places. To execute a conveyance is not only a strictly personal act, but an act that can be wholly performed where the decree commanding it is rendered. It is probable that no court would oblige a citizen or subject to go abroad, and there deliver a deed or make livery of seizin. To drive persons out of the realm by decree, though only to transact business, would savor of a sentence of transportation. To send them out against their will to bring in property and surrender it on summons of garnishment, would be a kind of banishment, with a charge to return laden with foreign spoils.

But it is said that, though the property now in question was in Alabama when the garnishment was served, it was voluntarily brought into Georgia afterwards by the garnishee, with the consent of the owner; and that, as it was in the hands of the garnishee within this state after service

and before answer, the garnishment became effective. This suggestion is founded on that part of section 3536 of the Code which defines the matters touching which a garnishee shall, by the term of the summons, be required to answer. He shall " depose on oath what he is indebted to, or what property or effects he has in his hands belonging to the defendant, or had at the time of the service of the summons of garnishment; and also what he has become indebted to the defendant, or what property and effects he has received or got possession of belonging to the defendant, between the time of the service of said summons, and the time of making his return." The section from which this extract is taken relates more particularly to garnishments other than those in attachment cases; but admitting that the provision applies to attachment cases as well, and that the scope of the answer in them must be the same as in others, what is the result? Garnishment is a seizure where there is anything subject to be seized at the time the officer of the law performs his function; with nothing *then* to seize, it is like the casting of a net and making a " water haul." If the cast is not a total failure, if anything is caught, whether debt, property or effects, nothing once in can get out, and the net, so to speak, remains undrawn until the result is reported by return or answer, and whatever enters, up to that time, is equally a part of the capture. The attaching creditor may garnish any person indebted to, or having property or effects of the defendant, that is, in general terms, any debtor or bailee of the defendant; but there is no proper authority for garnishing all the people in the state every time an attachment is issued. As many as are garnished in the prescribed manner are presumed to be debtors or bailees, if they fail to answer and deny it; but when a garnishee answers as comprehensively and minutely as the statute requires, and it appears from the answer that he was not either a debtor or a bailee of the defendant at the date of the service, then, unless his answer is traversed and the traverse maintained, it is manifest that he ought not to have been

called upon at all; for, as to him, there was no cause of action. That he has since become indebted, or acquired possession of property or effects, is pertinent and material if he was either debtor or bailee, so as to be subject to garnishment, when the process was executed; but if he was neither of these *then,* what he has become since is of no consequence. The process, if served upon the right person, will operate to bring up and settle every thing for which he ought to account at the time of making his return or answer; but if served upon a wrong person, and if it is made so to appear, affirmatively, the garnishment will bring up nothing. These views are amply supported by that section of the Code first cited *supra,* the section, and the only one, which describes the persons who may be served with garnishment in ordinary cases of attachment. The language is "any person who may be indebted to, or have property or effects of, the defendant in their hands." That "may be," not, that may be or *become.* "Or have." Have when? Surely, the meaning is, that the having is to be at the time of the service. Why garnish anybody who owes nothing and has nothing? Why should such a person be called into court? It is enough that the plaintiff may call every person "that may be indebted to, or have property or effects of, the defendant." In calling them he is within the authority of the statute, and not misapplying it. But in calling other persons, those who neither owe the defendant nor have here any of his property or effects, he is, wittingly or unwittingly, abusing the process which the law gives for more restricted use.

Finally, if we are mistaken, and if in ordinary cases debtors or bailees, though not such at the time of service, can be held the same as if they had been, we think common carriers, as a result of their peculiar relations to the public, constitute an exception. There are implied exceptions to the sweeping terms of the garnishment laws, and this could be fairly included as one among them. Can creditors keep all the railroads of the country blockaded with garnish-

ments, renewing or repeating them as fast as they are dissolved by answer, and making them effectual to deter or delay traffic and travel, whether service by the officer be well timed or not? Can they garnish all futurity? all future business? and, as it were, set and keep set a perpetual dead-fall to catch to-morrow? Generally, the process of a court deals with the present or the past. To anticipate a cause of action and put the remedy in force before the right has accrued, violates the usual method and analogies of the law. If it is ascertained by telegraph that a person has left New York for New Orleans, *via* Atlanta, with his luggage, or that he has ordered a consignment of goods, can his creditor here serve garnishments immediately to take effect upon the luggage or goods whenever they may happen to enter the territory of Georgia? We think not. In the present case, the process was barren. It fell dead, because the company, though a bailee, was not, in the absence of the property from the state, amenable to the laws of Georgia, but to the laws of Alabama, the state in which the property was. The process did not revive, and take hold upon the property, when the same was afterwards brought into this state, and the garnishee incurred no responsibility to the plaintiff whatever. The court below erred in not sustaining the *certiorari* as to both trunks.

Cited in the argument: 45 *Ga.*, 486 ; 12 *Ib.*, 217 ; 25 *Ib.*, 61 ; 48 *Ib.*, 351 ; 55 *Ib.*, 132 ; 1 Black, 101 ; 18 Vt., 186 ; 37 Barb., 124 ; Code, §§3280, 3369 ; 44 *Ga.*, 647 ; Code, §3305 ; 11 Wall., 210 ; 20 How., 227 : 1 Espin., 205, and note ; *Ib.*, 207.

Judgment reversed.

WARNER, Chief Justice, concurred, but furnished no written opinion.

JACKSON, Judge, dissenting.

I dissent in this case. The facts are these : Thornton & Acee sued Shorter in the justice court on an account, in Co-

lumbus, Muscogee county, where the court had jurisdiction of him. He was about to leave on the cars of the Western Railroad for West Point. An attempt was made to levy an attachment *pendente lite* upon two trunks of Shorter at the depot in Columbus, but the conductor resisted the officer of the law, and prevented the actual attachment. The train left for West Point, Georgia, and after it left and when it was about Opelika, in Alabama, Thornton & Acee served the agent of the company at Columbus with summons of garnishment. The Western Railroad of Alabama, as its name imports, is a foreign corporation with feet in Georgia, but its head and body in Alabama. It runs from Columbus, Ga., to West Point, Ga. It was chartered by Alabama. Its principal office is in Alabama, and its president resides there.

Such being its status, it being a foreign corporation, I hold that any of its property found in Georgia may be levied upon by attachment, and that if it owes any debtor any money or has in its hands any effects of any debtor, it may be garnished by serving the agent in Georgia. If it were a domestic corporation, the service should be upon the president—45 *Ga.*, 486; but it cannot be upon the president in the case of a foreign corporation, because there is no president in Georgia, and therefore service is good upon the agent. It has been so distinctly ruled in the case of *The City Fire Insurance Company of Hartford vs. Carrugi*, 41 *Ga.*, 670.

The court there say: "By the common law, process against a corporation must be served upon its president or principal officer—Angell & Ames, sec. 404; and it is doubted if he can carry his functions as principal officer with him by a mere accidental visit to another jurisdiction." Thus the court intimates that should the president even be caught here he could not be served; but that the service should be on the resident agent. And then the court, quoting from the Code, 3369th section, which authorizes service upon the agent, adds: "Why should not a foreign corporation stand

upon the same footing and be served in the same way ?   *   * *   In our judgment it may be made a defendant to a suit here, and may be served by serving its agent just as a Georgia corporation may."

Again, in 48 *Ga.*, 351, it is ruled that a foreign corporation doing business in Georgia, may be garnished for a debt it may owe anywhere in this state where suit for such debt may be brought; and that was a railroad case—the case of the *Selma, Rome and Dalton Railroad Company vs. Tyson.* After showing from 5 *Ga.*, 531, and 41 *Ga.*, 671, that any goods it has here may be attached, the court says: "Why, then, is it not liable to the garnishment laws? A garnishment is a suit. Its creditor can bring its action for the debt, and there can be no reason in principle why one to whom that creditor is indebted may not, by garnishment of the corporation, subject its creditor's claim to the payment of debts. A Georgia corporation is not subject to garnishment in any county where suit could not be brought for the debt it is charged to owe. So it is with the foreign corporation. It is not liable to garnishment except where suit could be brought on the debt it is charged to owe. See *Clark vs. Chapman* 45 *Ga.*, 486."

I submit that the very point made in this case in respect to service upon the agent was decided in that case; for in the case at bar, suit could be, and was, brought in Muscogee county on the debt against the principal debtor, Shorter, and the agent in Columbus, in Muscogee county, was served with the summons of garnishment. So there, the service was upon the agent in Dalton, Georgia. Objection was made that its president did not live in Georgia, and was not, and could not be served. The justice of the peace dismissed the garnishment. The case was taken to the superior court by *certiorari*, and the court reversed the justice of the peace. It was brought here, and this court reversed the judgment on another ground; but held that the corporation was liable to be served on the agent where suit could be brought on the debt it is charged to owe. That case covers this, so far as service is concerned. See Code, §3281.

We then have the corporation properly served. What must it answer as to debts it owes and effects it has of the principal debtor? Code, §3536, as amended by the act of 1869, requires the garnishee to answer, "also what he has been indebted to defendant, or what property or effects he has received or got possession of belonging to the defendant, between the time of service of said summons and the time of making his return." So that, although at the moment the company was served in this case, it had no effects within our jurisdiction, the trunks being at Opelika, in Alabama, yet, two hours afterwards, it had those trunks at West Point, in Georgia.

Therefore, it had effects of the principal debtor "*between the time of service of the summons and the time of making the return*," within the jurisdiction at West Point. It is clear, then, that the corporation was duly served, by its agent being served at Columbus, in Muscogee county, the place where the principal debtor resided, and where its agent was. It is clear that it had effects, in the shape of trunks, in its possession in Georgia within the time it was required to answer, and within which it was liable for those effects; and not having relieved itself by surrendering those effects, it was rightly held to be liable for their value. It makes no difference that, at the moment of service, the effects were out of the state, if they got back before the garnishee's return or answer, and got back in his possession. A mule drover is garnished. When the summons is served, the mules are in Girard, across the Chattahoochee, in Alabama, but before he makes his answer, he drives them back into Columbus, Georgia, and so answers that they belong to the debtor, but, at the time of the service, were over the river; yet, at the time of his answer, or within two hours after his service, were back in Georgia, would he not be liable? Clearly, I think. If so, this corporation is liable also.

That leaves but one question. Can the trunk of a traveler be attached? Why not? It is not clothing, wearing apparel, necessarily. It may be full of gold, or of silk, or of

diamonds.   Besides, the trunk itself in this case is worth $25.
That is liable, if nothing in it is.   The general rule is, that
property in the hands of the carrier may be attached, 48
*Ga.*, 432; and that the carrier should not resist the pro-
cess, as was done in the case at bar.   So 55 *Ga.*, 132,
shows that service upon the agent would be sufficient if
it called on him to answer what the carrier had or owed.   See
also 1st Black, 101; 18 Vermont, 186; 37 Barbour, 124.

Inasmuch as one of the two trunks came open and the
company took back the check and thereby delivered posses-
sion to Shorter at Opelika, or before the train reached that
point, the court probably was right in ruling that the company
was not responsible for that trunk; but for the other it was,
because the company held that check until the train reached
West Point, Georgia, and then, with full knowledge that its
agent had been garnished at Columbus, the conductor gave
it to Shorter.

It seems to me that this corporation has acted badly in
this whole business.   Its conductor violated the law at Co-
lumbus in resisting the process of the court by attachment,
when Fontaine was ready to secure the debt for his friend,
Shorter ; then it contemned the service of garnishment, and
delivered the property after full knowledge to Shorter ; and
not satisfied with the judgment of the justice and the su-
perior court, it has brought a fourteen dollar case to this
court; and I can but regret that it has finally triumphed in
what I conceive to be a spirit of effrontery and litigious-
ness.   Like the case of the pair of boots from Americus, I
think that the maxim " *de minimis non curat lex,*" should
turn the scale against such persistent battles over little
things in cases of doubt, if I entertained any ; and as I am
clear in my own view of the law and do not feel compelled
to invoke any doubt to my aid, I dissent from this judgment
of reversal.   In the other case of the Western Railroad of
Alabama *vs.* Thomas & Prescott, I think that the better
judgment would be that the plaintiff in attachment had
both remedies—against the bailiff for not seizing the goods,

and the company for the tort of its agent in preventing the levy. I doubt, therefore, the propriety of that reversal also. It is perhaps not an open question, and I do not, therefore dissent.