# COMMON PLEAS OF LACKAWANNA CO.

**BRUCE & COOK vs. MALONEY M'F'G. AND GAS COMPANY, LIMITED**

RULE TO SHOW CAUSE WHY EXECUTION SHALL NOT ISSUE AGAINST THE MEMBERS OF THIS ASSOCIATION INDIVIDUALLY.

The schedule called for under the Act of 1876, when a limited partnership association is formed must be strictly in conformity with the Act of Assembly, otherwise each member will be treated as if he was a general partner and liable for the whole liabilities of the concern.

Opinion by HANDLEY, P. J.

This association was organized under the Act of 1874. The depositions to sustain the rule show that the company was organized on the first day of October, 1877, and continued doing business until the tenth day of July, 1878. The company had no stock ledger, and there were virtually no cash payments for stock subscriptions. Mr. Maloney owned a stock of goods amounting to $12,500, also certain contract rights and privileges valued at $2,500. This constituted the stock of the corporation. At the closing of the business of the concern, the company sold out the stock of goods for the sum of $5,339.35. That the indebtedness of the company at the time of the sale was about $5,000.00. Up to the present none of the stock subscriptions were paid in in cash.

Attached to the depositions is a copy of the articles of association. Among other things appearing in this agreement, is the following, namely: "The total amount of capital is fifteen thousand dollars, which said amount of capital has been fully paid in by the assets and property of Martin Maloney at a valuation which has been approved by all the members subscribing to the stock of said association. A description of which property and the said valuation, and the name of the parties so contributing are as follows: Contract with the Pennsylvania Globe Gaslight Co. at a valuation of $2,500.00; merchandise consisting of

iron, steel, tin, and copperware, gas pipes and gas fixtures, plumbing materials, stoves, furnaces, pumps, terra cotta pipes, lamps and lamp posts, safe, store furniture and fixtures, all the goods, tools and chattels now on the premises 209 Lackawanna Avenue, valued at $12,500." The same article also provided that the association was to continue for twenty years.

. Now the first section of the act of 1874, P. L. 1874 p. 271, provides that when three or more persons may desire to form a partnership association for the purpose of conducting any lawful business within this state, "they may do so by subscribing and contributing capital thereto, which capital shall alone be liable for the debts of such association." This section also provides, that the statement in writing establishing such association, shall contain a statement showing "the total amount of capital, and when and how to be paid."

The supplement of 1876 allows the partners, "to make contributions to the capital thereof in real and personal estate, monies or other property, at a valuation to be approved by all the members subscribing to the capital of such association ; *Provide* ·, That in the statement required to be recorded by the first section of the said act, subscriptions to the capital, whether in cash or in property, shall be certified in this respect according to the fact; and when property has been contributed as part of the capital, a schedule containing the names of the parties so contributing with a description and valuation of the property so contributed shall be inserted.   P. L. 1876, 89, section 1.

Neither the supplement of 1875, nor the supplement of 1879, has any bearing upon the question involved in this case.   No such schedule, as the act of 1876 contemplates, was filed by the members of this association, and hence under the rule adopted in this case of Bennet vs. Impact Brick Co. "Limited," 5 W. N. 58, these parties have not complied with the law.

No prudent business man ought to enter an association formed under the limited partnership law.   It is much

more honorable when a person desires to enter into partnership, to enter into a general partnership, and thus assume, knowingly, all the duties and responsibilities of such a partnership.

If, however, a man desires at some future day to witness his property swept away, then let him enter into a limited partnership concern. He will soon discover that building associations with all their faults are not to be compared to such concerns. Perhaps at some future day when the act of 1874, and the several supplements thereto are more fully understood, business men may with safety invest their money therein.

In the present case, we have connected with this association some of our best business men, and we have no hesitation in saying that they did not know at the time they entered this association the liability the law cast upon them, the moment the articles of association were executed. When it is understood that man cannot limit man in his actions, then there will be more caution exhibited by men who desire to undertake that impossible thing.

The rule in this case, under the present showing, will have to be made absolute, and execution allowed as prayed for.

Rule absolute.

When the court cannot recall the title of a case they sometimes have an amusing way of identifying it, as for example, in Western R. R. vs. Thornton, 60 Ga. 300: 'Like the case of the pair of boots from Americus, I think that the the maximum '*de minimis non curat lex*,' should turn the scale against such persistent battles over little things in cases of doubt, if I entertained any."

*NOTES OF RECENT DECISIONS IN SUPREME
COURT OF PENNSYLVANIA.*

A solicitor employed to draw the papers in relation to a loan of money on mortgage, cannot delegate his authority to obtain searches against the property so far as to bind his principal by his agent's knowledge of the omission of material facts in a search.

A., employed as solicitor by a building and loan association to prepare the papers for a loan upon a mortgage, in order to hasten the settlement employed B.,the mortgagor, to order and obtain the mortgage search from the Recorder's office. B., who was aware of the existence of a prior unsatisfied mortgage, requested the Recorder's deputy to omit it on the search, stating that he intended to pay it off with the money about to be loaned; and it was omitted. In an action for damages by the association against the Recorder for the loss occasioned by such omission:

*Held*, (reversing the judgment of the Court below), that the association was not bound by B.'s knowlege in the premises, and that the Recorder was liable.—*Peabody Building Association vs. Houseman.*

The Act of 4 April, 1877, allowing an appeal from the refusal to open a judgment entered by warrant of attorney or confessed by note, does not apply where the judgment so entered is afterwards revived by agreement of the parties.

A judgment of revival entered by agreement of the parties, upon an amicable scire facias, is not a judgment entered by virtue of a warrant of attorney, and no appeal lies from the refusal of a Court to open such a judgment.

Walter vs. Breisch, 5 WEEKLY NOTES, 358, distinguished.—*Lamb's Appeal.*

# AN INDORSER'S LIABILITIES.

## THE DANGERS OF BECOMING SECURITY FOR A MARRIED WOMAN.

Judge Hanna on the 30th of July, 1879, filed in the Orphans' Court his adjudication of the estate of the late Adam M. Simpson. His Honor disallowed the claim of Mrs. Lillie Branson, to recover the sum of $5,000 deposited with the decedent on July 12,1878, for investment, on the ground that no evidence in support of the claim was adduced. The claim of P. P. Gustine, to recover the amount of two promissory notes for a total of $349, made and signed by Maggie A. Fiegel, and indorsed by the decedent, was allowed. The evidence showed that Mrs. Fiegel had requested Gustine to sell her some furniture upon credit, but that he had declined, upon the ground that she was a married woman. He, however, agreed to make the sale if she would bring him the indorsement of a responsible party. She, therefore, executed promissory notes and obtained Simpson's indorsement. But when the notes matured they went to protest. In his decision Judge Hanna remarked:

"It is needless to cite authorities in support of the principle that a married woman cannot be held liable for the payment of a promissory note or bond, or upon any other contract entered into by her, unless it be for the purchase of the necessaries, or the necessary alteration and improvement of her separate estate. She can take advantage of her disability, under the plea of coverture, but no one can plead this incapacity to contract but herself, and it is purely a personal privilege. (Hope Building Association vs. Lance, 6 W. N. C., 219.) While, therefore, it is clear that Mrs. Fiegel, the maker of these promissory notes, would not be liable therefor, and the plea of coverture would bar any recovery thereon, yet we think that the decedent, as indorser, is liable to the holder for value, and it is immaterial that the maker was a married woman."

# LEGAL REPRESENTATIVES

In the strict and literal acceptation of the term "legal representatives," it means executors or administrators, though it is frequently used, even in statutes as well as wills, deeds, contracts, etc., in a broader and more liberal sense, and is held to embrace heirs, assignees, purchasers and grantees. In the construction of the term, therefore, it is held by the courts that the question of intention must be taken into consideration, and this is to be gathered from the concomitant circumstances, the relative position of the parties to be affected, and the existing state of affairs, as well as from the instrument itself.

In Delanny vs. Burnett, 4 Gilm., 464, and in Phelps vs. Smith, 15 Ill., 574, the Supreme Court of Illinois held, that the assignee or purchaser was the legal representatives; while in Warnecke vs. Lembca, 71 Ill., 91, it was held that, where the legal representative was authorized to advertise, sell and convey property, it did not authorize the administratrix to advertise, sell and convey property.

In the Land Department, and in the United States courts, it has been uniformly held, that the term "legal representatives," in certificates for land patents, means heirs, where there has been no transfer, and assignees or grantees, where there has been a transfer.

See Hogan vs. Page, 2 Wall., 607, and Carpenter vs. Russell, 19 Wall., 137.—*Law Reporter.*

---

## NOTES OF RECENT DECISIONS IN SUPREME COURT OF PENNSYLVANIA.

---

A mutual insurance company is relieved from liability for loss occasioned by fire, after a voluntary surrender and acceptance of the policy, and payment of assessments then due. No formal cancellation of the same, or erasure of

the name of the insured from the books of the company is necessary, notwithstanding the by-laws provided that the liability of the members should continue until such cancellation and erasure should have been made.—*Farmer's Mutual Insurance Co. vs. Winger.*

———

There is no right of adoption of children at common law. It is based entirely upon the Acts of May 4, 1855, providing for adoption by decree of the Court of Common Pleas, and the Act of April 2, 1872, providing for adoption by deed. By deed of August 11, 1863, A. agreed to "adopt B. as his daughter;" in May, 1870, he died intestate: *Held*, that, as under the law as it stood in 1870 the deed of 1863 gave B. no right to share as a child in A.'s estate, the retrospective provisions of the Act of April 2, 1872, could not give her any such right, or divest the title to the estate which vested in A.'s children immediately on their father's death. In order to take a parol gift of land out of the Statute of Frauds, improvement incapable of pecuniary compensation must combine with possession by the donee.—*Bullard vs. Ward.*

———

A sheriff's sale made by virtue of a lien acquired after a conveyance by the debtor, vests in the purchaser the rights of creditors to attack the conveyance for fraud; liens attaching to the grantor's interest after the conveyance are payable out of the fund arising from such sheriff's sale; liens against the grantor's interest prior to the conveyance are not divested by the sale. Judgment was recovered against A., who afterwards acquired an equitable interest in certain lands. He, then, in December, 1876, caused the lands to be conveyed to B., for the purpose, it was alleged, of defrauding his creditors. Execution on the judgment issued in February, 1877, and the land was levied upon and sold by the sheriff as A.'s property. The

fund arising from the sale was claimed by the judgment creditor, and by the city for taxes assessed for 1877: *Held* (affirming the decree of the Court below), that the taxes were payable out of the fund. Vanarsdalen's App., 3 WEELKY NOTES, 463, followed.—*Dungan's Appeal.*

---

Where the consideration of a promissory note is a prom'.se by the payees to abstain from prosecuting the son of the maker for forgery. the note is void. Fulton vs. Hood, 10 Casey, 365, explained.—*National Bank of Oxford vs. Kirk.*

---

The confirmation of an award of damages by a road jury for opening streets under the Act of April 1, 1864, is a final judgment, the liability of the city being absolutely fixed by the confirmation. The judgment is for the payment of money. The Court of Quarter Sessions, which from the earliest period in this State has had exclusive jurisdiction in all matters relating to the opening of streets and the assessment of damages, although it has no power to issue the prerogative writ of mandamus, has the right to issue an order to enforce a judgment standing on its records. This right is inherent in every Court, and must be presumed to exist in the absence of legislative inhibition. Legislation in regard to the opening of streets and assessment of damages in the city of Philadelphia reviewed by PAXSON, J.—*In Re Sedgly Avenue.*

---

In the exercise of the police power the legislature may require railway companies to light such portions of their roads as are within a corporation.