Spear, J.
A preliminary question was made by •defendant in error in the circuit court, and is renewed here, with respect to the sufficiency of the motion for new trial, and attention is called to the form of the motion, which is: “First, that the judgment
is not sustained by sufficient evidence; and, second, it is contrary to law.” It is contended that the motion is not sufficient to bring the evidence in the record up for review because the attack is made, not upon the finding or decision of the court, but upon the judgment, and hence the evidence cannot be examined in a reviewing court for any purpose. To sustain this contention would, we think, be to carry techincality to extreme length, especially in view of the provisions of sections 4948 and 5115, Revised Statutes, requiring liberality in the construction of proceedings, and the disregard of immaterial errors g,nd defects.
*555 The statute, sec. 5305, gives one of the grounds for new trial: “6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law.” This provision treats of the final action of a jury, a referee or master, and of a court. A jury’s work ends with a verdict, that of a referee or master with a report, and that of a court in a decision. We have here no verdict and no report; simply the action of the court itself. What is a decision as here expressed? Manifestly it is not simply a finding, for a finding concludes nothing. The defeated party is not hurt by a finding, nor is the controversy ended by it, if the action stops there. I-t would seem that the act called here a decision is intended to embrace the last act of the court; in other Avords the judgment. This would appear to be a rational conclusion, giving to the language of clause 6 a practical construction, without the aid of authorities. But the text books make it clear. ' It is true that in an abstract sense there is a shade of difference between the import of the word “decision” and the word “judgment.” As expressed by Abbott (Law Diet., 351), “the decision is the resolution of the principles which determine the controversy; the judgment is the formal paper applying them to the rights of the parties.” But the same author gives the general definition of decision as “the result of the deliberations of a tribunal; the judicial determination of the question or cause.” Freeman in his work on Judgments, sec. 2, says: “A judgment, except where the signification of the word has been changed by statute, is defined as being “the decision or sentence of the law pronounced by a court, or other tribunal, upon the matter contained in the record.” Wharton (Law. Diet., 235 and 437), gives “Decision, a judgment,” and “Judgment, judicial determination; decision of a *556 court.” Definitions in other law dictionaries are of like import. See Bouvier, Rapalje, Anderson, Cochran and others. See, also, Houston v. Williams, 13 Cal., 24. It is insisted by counsel that previous decisions of this court, cited in the brief, rule this case. We think they have no application to it.
We are of opinion that the language of the motion is a substantial statement of the ground authorized by the sixth clause of sec. 5305, and should be held sufficient to all intents and purposes.
Coming now to the merits of the case, the question presented is whether or not the court of Allen county had, by virtue of the attachment proceedings, such control or jurisdiction over the property of the defendants situate in Indiana, and in the possession of the Company, as to enable it to make a valid order requiring the garnishee to produce that property in Allen county and surrender it into the custody of the court. And as to the garnishee, the question is not merely, whether the garnishee had property of the debtor in its hands, but whether it had the property under such circumstances as to make it answerable for it in Allen county.
It is to be remarked at the outset that an attachment proceeding is exclusively a statutory one, and hence we look to our law regulating attachments for the source of authority to the court and its officers. What that statute lawfully authorizes, the plaintiff in attachment is entitled to demand; what it fails to authorize he may not demand, for it is well established that equity does not and cannot aid the statute. The purpose of the statute is to reach the property of defendant in the suit, and subject it to the demand of the plaintiff. In this aspect an attachment proceeding is in the nature of a proceeding in rcm, and, as in all proceedings in rem, the thing *557 against which the proceedings are directed must be brought within the jurisdiction of the court. 1 Green. En. sections 542-3. The proceeding reaches out for the tangible property of the defendant, to b¿ levied on directly by the officer or obtained by garnishee process served on one who may have property of defendant in his possession which the officer cannot get at, or may be owing the defendant. The term attach implies seizure. As stated by Hosmer, C. J., in Hollister v. Goodale, 8 Conn., 332; “The word attach, derived remotely from the Latin term attingo, and more immediately from the French attacher, signifies to take or touch, and was adopted as a precise expression of the thing; nam qui nomina intelligit, res etiam intelligit. The only object of attachment is to take out of the defendant’s possession, and to transfer into the custody of the law, acting through its legal officer, the goods attached, that they may, if necessary, be seized in execution, and be disposed of and delivered to the purchaser. From both these considerations it is apparent that to attach is to take actual possession of property. Hence, the legal doctrine is firmly established that to constitute an attachment of goods, the officer must have actual possession and custody.” This well states the principle at the foundation of the law of attachment, and is to be kept in mind as having an important bearing on the question here. As ancillary to it is the other method of getting at the property by process of garnishment already referred to.
Our statute provides, section 5524 and following, that an order of attachment shall require the officer to attach the goods, etc., of the defendant in his county, not exempt, etc., or so much as will satisfy the plaintiff’s claim. And that when the property attached “is personal property, and can be come at, *558 he shall take it into his custody, and hold it subject to the order of the court.” This seizure and possession is essential to the court’s jurisdiction over the property. Orders of attachment may be issued to the sheriffs of different counties of the state. Where garnishee process issues, if the officer can not get possession of the property, he shall leave with the garnishee a copy of an order of attachment and a written notice that he appear in court and answer touching the property and credits of the defendant in his possession or under his control; and he shall stand liable to the plaintiff for all property in his hands from the time of notice. If he answer, and it be discovered that on or after the service of the order and notice he was possessed of any property of defendant, the court may order the delivery of such property into court. If the garnishee deliver the property disclosed into court, he is allowed his costs.
No question is or could be made that property without the state can, by virtue of a process of attachment, be seized by on Ohio officer, and of course such property could not be delivered into court. And it seems to us clear, that, notwithstanding the somewhat general language of the statute respecting garnishment, the property in the garnishee’s hands, for which he must answer, is intended by the statute to be limited to property within the state, for it could hardly have been the intention of the general assembly to give a plaintiff in attachment greater power over the tangible property of his debtor situate out of the state by virtue of garnishment than would be possible by the direct process of attachment. On the contrary it would seem, considering all the statutes together, that the intent is clearly manifest that property which may be se *559 questered in the hands of a garnishee must be within the state in order that it may be taken and sold to satisfy such judgment as may be obtained against the debtor, for it is in contemplation that the officer will seize the property in the possession of the garnishee if he is able to get at it; also that the garnishee may voluntarily surrender it to the officer. The inference seems reasonable that property to be so reached is intended to be confined to such as would be subject to seizure by attachment or execution if in the hands of the debtor himself.
The many inconveniences and hardships which would be likely to follow a contrary holding may be easily imagined. The case at bar presents a marked instance. There being no connection between the system of lines located in the producing oil fields in Indiana and the system located in Ohio, literal obedience to the order of the court would be, if not impossible, at least extremely impracticable. Beside this the court of Allen county has ordered the Company to deliver this oil to its sheriff in that county; the court of Huntington county, Indiana, has ordered it to deliver the oil to its receiver. If both orders are valid the Company must deliver the oil in one state and pay its value in the other. A stronger case for the application of the argument ab inconvenienti could hardly be conceived.
It is intimated, though not distinctly claimed, that the court, having the person of the garnishee within its jurisdiction, may, by virtue of some general power, enforce its order. Cases arise involving contract relations in which the undertaking to perform an act purely personal may be enforced, though the act relates to property which is extra-territorial, such as decrees for the specific performance of contracts to *560 convey land situate in foreign parts. Suck execution is not only a strictly personal act, but one to be ■wholly performed where the decree commanding it is rendered. But the practice cannot prevail as to attachments for, as already stated, attachment is strictly statutory. PoAver to entertain such proceeding is given to justices of the peace upon practically the same terms as regulate its exercise by the common pleas, and, taking the statutes on the subject as a whole, it is entirely clear that it Avas never intended to clothe all courts having jurisdiction of the garnishee process Avith equity powers.
It may not be necessary to the determination of this case to decide whether or not there is power in the general assembly to authorize seizure of property outside the state through attachment and garnishee process, but the consideration that the power is at least extremely doubtful, affords another reason for giving to the statutes a construction denying the intent to so provide. It is said in 8 Am. & Eng. Ency. Lrav, 1156: “To charge a garnishee for property of defendant, it is absolutely essential that at the time of service of process, he should have it in his possession and within the state.” And at page 1255: “The domicile of the garnishee does not give the courts of the state jurisdiction over the debt he owes to a party in another state, and is not sufficient to sustain an action in rem. This is not determined by his domicile, but by the situs of the property which he holds.” Mr. Justice Story, in his Conflict of Laws, section 543, observes: “But although every nation may thus rightfully exercise jurisdiction over all persons within its domains, yet all are to understand that in regard thereto, the doctrine applies only to suits purely personal or to suits connected with property within the same sovereignty. For although a person may *561 be within the territorial jurisdiction, yet it is by no means true, in virtue thereof, every sort of suit may there be maintainable against him. A suit cannot for instance, be maintainable against him so as to absolutely bind his property elsewhere.” And, section 550: “A nation within whose territory any personal property is actually situate, has as entire domination over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there. It may regulate its transfer, and subject it to process and execution, and provide for and control the uses and disposition of it, to the same extent that it may exert its authority over immovable property.” Surely this doctrine can not be maintained if the courts of a sister state may sequester and control property outside of their limits at their will. See also, Rose v. Himely, 4 Cranch, 241-277. The principle above stated seems to rest upon substantial ground. The exclusive dominion over property being in the country or state where the property is, remedies afforded to creditors by the laws of their state would have no more concern with it than if it were in a foreign land. Such other states could not reach it for the purpose of taxing it, and thus add to their revenues, or for the purpose of collecting taxes already due and not otherwise collectible. And what the state cannot do for hersélf it would seem clear she cannot do for her citizens. A debtor who by himself or his bailee, has property in another state has the right to keep it there; and such state has an interest in his exercise of the right free from interference by other sovereignties. Western R. R. Co. v. Thornton, 60 Ga., 300.
Decisions by courts of high standing in support of the proposition generally that property outside of the state is not the subject of garnishment are *562 abundant. Some of them follow: Lawrence v. Smith, 45 N. H., 533; Young v. Rose, 11 Foster, 201; Clark v. Brewer, 6 Gray, 320; Penna. R’d Co. v. Pennock, 51 Pa. St., 244; Wheat v. Railroad Co., 4 Kan., 370; Ill. Gen. R. R. Co. v. Cobb, 48 Ill., 402; Sutherland v. Bank, 78 Ky., 250; Bates v. C. M. & St. P. R’y Co., 60 Wis., 296; Montrose P. Co. v, D. & E. Man’g Co., 40 N. W. (Iowa), 705.
But it is insisted that even though it should be conceded that the general rule is as claimed by plaintiff in error, the contract between Miller, Tallmage & Russell and the Company, called the “run ticket” takes this case out of that rule, inasmuch as the oil produced in the two fields was considered and made a common stock of oil out of which the ticket might be paid by delivery of the quantity of oil at any of the stations of the Lima division; so that the ticket represented so much of the common stock sohie of which was in Ohio, and hence demand might be satisfied by a delivery at any of the stations in Ohio. The statement of fact is correct so far as it goes, but it ignores the material qualification provided in the ticket, “that the point of delivery shall be at the option of the Company.” Now it is conceded in argument by defendant in error that “the liability and rights of this garnishee to this attaching creditor are measured by its liability to Miller, Tallmage & Russell.” That is, if under the facts as they existed at the time of the attachment and garnishee process were issued, Miller, Tallmage & Russell could have maintained in Allen county replevin against the Company for this oil, and, failing to obtain possession of the oil, would have been entitled to a recovery for its value, then Fee would have the right to reach the same result by attachment and garnishment. But could Miller, Tallmage & Russell have maintained such an action *563 in Allen county at that time? Manifestly not. The option of selecting the point of delivery had not been exercised by the Company , as no action by the owners had called for its exercise. Conceding that upon demand being made by the owners on the Company for delivery to them of their oil, with tender of charges, a refusal had followed, they might have maintained replevin anywhere in the Lima division, still the stubborn fact remains that no such demand had been made, nor any refusal. Hence the owners had then no cause of action, and, measuring the attaching creditor’s rights by those of the owners of the oil, he had no ground of action. But we are reminded that there was a demand on the Company by the sheriff of Allen county after judgment, and a refusal. Suppose this to be so, how does it help the matter? The demand was for delivery of the oil in Allen county. It was not accompanied by any tender of charges which had accrued. It was not even made at.the time of the service of the writ but after judgment against the non-resident defendants, and, presumably, after the making of the order on the garnishee, and if so could not have been a predicate for such order. The proposition that this demand gave the attaching creditor a right of action entirely loses sight of the fact that no breach of the contract had occurred between Miller, Tallmage & Bussell and the Company, and that, for ought that appears, it was ready and willing to deliver the oil to them on its line in Indiana. At all events if they had then made demand for delivery of the oil in Allen county it might, with entire regard to all contract rights, have been refused by the Company, and they would have had, by reason of refusal of such demand, no right of action. By the same token the sheriff had no such right against the garnishee.
*564 Our conclusion is that the court of common pleas of Allen county did not, by the attachment and garnishment proceeding, acquire jurisdiction of the property of Miller, Tallmage & Russell, in the possession of the Company in Indiana, and was without power to make the order on the garnishee to deliver the property into the custody of the court, and that its order in that behalf is without legal effect.
It follows that the judgment of both courts will be reversed, and judgment be entered for plaintiff in error.

Reversed.